IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NAIM TETOVA, | ) |
| Claimant, | ) No. 14-cv-3201 |
| v. | ) Jeffrey T. Gilbert<br>) Magistrate Judge |
| CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security, | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Claimant Naim Tetova ("Claimant") seeks review of the final decision of Respondent Carolyn W. Colvin, the Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 9.] The parties have filed cross-motions for summary judgment under Federal Rule of Civil Procedure 56. [ECF Nos. 19, 27.] For the reasons discussed below, Claimant's motion for summary judgment is granted and the Commissioner's motion is denied. The decision of the Commissioner is reversed, and the case is remanded to the Social Security Administration ("the SSA") for further proceedings consistent with this Memorandum Opinion and Order.

### I.     PROCEDURAL HISTORY

On September 7, 2011, Claimant filed an application for DIB, alleging a disability onset date of September 17, 2009. (R. 201-11.) After an initial denial and a denial on reconsideration, Claimant filed a request for an administrative hearing. (R. 61, 62, 74-75.) On October 24, 2012,

Claimant, represented by counsel, appeared and testified before an Administrative Law Judge ("the ALJ"). (R. 25-60.) A Vocational Expert ("the VE") also testified. *Id.*

On January 17, 2013, the ALJ issued a written decision denying Claimant's application for DIB based on a finding that he was not disabled under the Social Security Act. (R. 9-20.) As an initial matter, the ALJ first noted Claimant met the insured status requirements through March 31, 2015. (R. 14.) The opinion then followed the five-step sequential evaluation process required by Social Security Regulations. 20 C.F.R. § 404.1520(a)(i)-(iv).

At step one, the ALJ found Claimant had not engaged in Substantial Gainful Activity ("SGA") since his alleged onset date of September 17, 2009. (R. 14.) At step two, the ALJ found Claimant had the severe impairments of myocardial infarction status post-percutaneous transluminal coronary angioplasty, degenerative disc disease and sciatica, and diabetes mellitus. *Id.* At step three, the ALJ found Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). *Id.*

Before step four, the ALJ found Claimant had the residual functional capacity ("RFC") to perform light work, except that he could only occasionally climb ladders, ropes, and scaffolds. (R. 17.) Based on this RFC, the ALJ determined at step four that Claimant could not perform any past relevant work. (R. 19.) At step five, the ALJ considered Claimant's age, education, work experience, and RFC, and found there were jobs existing in significant numbers in the national economy that Claimant could perform, though she did not specify which jobs those were. *Id.* Because of this determination, the ALJ found Claimant was not disabled under the Act. *Id.* On March 25, 2014, the Appeals Council denied Claimant's request for review. (R. 1-4).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). A claimant then may seek review of this final decision in the district court. *Id.* Judicial review is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the district court will not uphold the ALJ's findings if the ALJ did not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the substantial evidence standard is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). The court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence . . . ." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## III. ANALYSIS

Claimant presents three issues for review. First, he argues the ALJ's analysis of his testimony was flawed. Second, he contends the ALJ did not properly consider the cumulative effects of his impairments. Third, he argues the ALJ erred in determining his RFC by not adequately accounting for his mental impairments. Each of these contentions has many subparts. The Court has decided to reorganize some of the arguments for the sake of clarity. Because the Court agrees that the ALJ erred in her analysis of Claimant's testimony, the expert opinions, and Claimant's GAF scores, the other arguments need not be addressed.

### A. The ALJ Improperly Evaluated Claimant's Testimony.

The Court will not overturn an ALJ's credibility determination unless it is "patently wrong." *See Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). An ALJ, though, must provide specific reasons for her credibility finding, and she must support those reasons with evidence and explanation sufficient to allow a reviewing body to understand her reasoning. *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). Moreover, in making a credibility determination, an ALJ is required to "build an accurate and logical bridge between the evidence and the result." *Shramrek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). Where an ALJ relies on "objective factors rather than subjective considerations" to discount a claimant's testimony, the reviewing court has "greater freedom" to scrutinize the ALJ's determination. *Id.*

In this case, the ALJ proffered several reasons for discrediting Claimant's testimony. The ALJ discounted Claimant's testimony that he was unable to afford treatment based solely on the fact that he smoked. (R. 18.) The ALJ also discounted Claimant's testimony that he had shortness of breath when he walks because he was a smoker. *Id.* The ALJ discounted Claimant's testimony about his inability to walk because he was advised to wear inserts to

4

minimize foot pain but, according to the ALJ, did not. *Id.* The ALJ also discounted this testimony because Claimant exercised for a portion of time. *Id.* The ALJ discounted Claimant's testimony about his chest pain because the "treatment records do not show this frequency of complaints of chest pain." *Id.* Each of these reasons for discounting Claimant's credibility is suspect.[1]

An ALJ may discount a claimant's testimony where he seeks treatment only sporadically. *See Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012); *Craft*, 539 F.3d at 679. Before doing so, though, the ALJ must examine why the claimant has received only sporadic treatment. *Shauger*, 675 F.3d at 696. If the evidence reveals the claimant has a good reason for not getting treatment, including inability to afford treatment, the ALJ cannot draw an adverse credibility inference from the lack of treatment. *Id.*; *Craft*, 539 F.3d at 679.

At the hearing in this case, Claimant continuously lamented his inability to afford treatment because he did not have insurance coverage. (R. 35, 37, 41.) He explained to the ALJ that he has not gone to the doctor since his stent placement which cost him nearly $60,000, a debt he has been unable to pay. *Id.* The ALJ never addressed this testimony. Instead she said Claimant must have had money to pay for medical care because he was a smoker and smoking "is an expensive habit to maintain in light of allegations of inability to afford treatment." (R. 18.) There is no evidence in the record showing smoking is anywhere near as costly as medical treatment. Indeed, it strains common sense to conclude that an impoverished person who buys cigarettes must be able to afford expensive medical care. Such an inference cannot be drawn without some evidentiary basis. Therefore, this portion of the ALJ's credibility analysis was not supported by the record.

---

[1] The ALJ also discounted Claimant's testimony about his memory and concentration for several reasons. This basis for discounting Claimant's testimony is not at issue in this appeal.

Relatedly, Claimant testified that he became breathless when walking. (R. 18.) The ALJ apparently concluded that this breathlessness must not be connected to Claimant's impairments, stating, "It is reasonable to conclude that smoking could also be attributed to the shortness of breath." (R. 18.) Presumably, the ALJ meant to say Claimant's shortness of breath could be attributed to his smoking. Regardless, the ALJ did not identify any evidentiary support in the record for her apparent conclusion that Claimant's shortness of breath was due to his smoking rather than to his medical condition. Instead, it is entirely speculative. An ALJ cannot speculate and play doctor in making a credibility determination. *See Rousey v. Heckler*, 771 F.2d 1065, 1070 (7th Cir. 1985) ("None of the medical evidence linked her chest pain directly to the smoking of cigarettes and it was not proper for the ALJ to independently construct that link."); *see also Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

Next, the ALJ disbelieved Claimant's testimony about his difficulty walking because doctors advised him to wear inserts for foot pain "but there is no evidence he followed this recommended treatment." (R. 18.) Here, the ALJ simply got the record wrong. At the hearing, the ALJ asked Claimant, "And you used inserts? Some of the inserts for your shoes?", and Claimant responded, "Yes." (R. 45.) Claimant then went on to state that the inserts did not help reduce his foot pain. *Id.* Dr. Robert MacNab's medical records also reveal that Claimant used both over-the-counter insoles and special insoles recommended by Dr. MacNab. (R. 541.) Even under the deferential standard for review of an ALJ's credibility determination, the Court "need not defer" where, as in this instance, the ALJ simply misstated or misunderstood the record. *Wates v. Barnhart*, 274 F. Supp. 2d 1024, 1038 (E.D. Wis. 2003).

The ALJ also referenced Claimant's exercise regimen of "working out three to four times a week for 60-90 minutes, lifting 30 pound weights, walking, and running." (R. 18.) The ALJ concluded that, despite Claimant's testimony, this exercise "show[ed] he could perform the exertional demands of light work." *Id.* However, in that very same paragraph, the ALJ noted that Claimant's attempt at exercise went badly. He "developed back pain that was later diagnosed as sciatica" seemingly as a result of this overly ambitious exercise regime. *Id.* Moreover, when Claimant told one of his nurses that this exercise regimen was leading to "new chest pressure," the nurse "advised him to stop all activity until seen by his cardiologist to avoid another cardiac event." (R. 482.) At the hearing, Claimant testified that, as this evidence would indicate, he was not able to maintain the physical exertion demanded by this short-lived exercise program. *See, e.g.,* R. 43 (he was only able to walk five to ten blocks before experiencing pain), R. 49 (he could lift only 25 pounds, at most). This fact is supported by the RFC assessment of Dr. Vidya Madala, who opined that Claimant could not lift 30 pound weights, but rather, could lift only 20 pounds occasionally and 10 pounds frequently. (R. 484.) Thus, the record does not support the ALJ's conclusions that Claimant's ill-fated attempt at exercise shows he was capable of light work and, therefore, that his testimony to the contrary was not credible. *See Scrogham v. Colvin*, 765 F.3d 685, 700 (7th Cir. 2014) ("Further, at least one of the activities was a precipitating event that led to one of Mr. Scrogham's doctor's visits. Surely, this type of ill-advised activity cannot support a conclusion that Mr. Scrogham was capable of performing full-time work.").

The only other credibility issue is the ALJ's determination that Claimant's chest pain was not as bad as he claimed because the treatment records did not reflect consistent complaints of chest pain. (R. 18.) This may be a permissible basis for discounting Claimant's testimony.

7

However, there are reasons for concern here as well because the ALJ did not sufficiently explain her rationale. Most importantly, the ALJ never discussed Claimant's testimony that he tried to fight his pain without going to the doctor (R. 40) and would not go to the doctor even when he was in significant pain because he did not have the money to pay for any care (R. 41). Also, to be clear, there is evidence in the record of at least some complaints of chest pain. For instance, on July 23, 2011, nearly two years after his disability onset date, Claimant presented to Rush Medical Center due to complaints of chest pain and shortness of breath. (R. 342.) He was again seen at Rush Medical Center on April 29, 2012, for dizziness and chest pains. (R. 617-18.) To be clear, the Court is not finding the ALJ was wrong to conclude that Claimant's complaints of chest pain did not appear frequently enough in the treatment notes to verify his testimony. Instead, the Court is concerned by the ALJ's lack of explanation and, more importantly, her failure to discuss Claimant's testimony that may explain the limited number of such complaints to medical providers.[2]

As the above discussion makes clear, the ALJ's credibility determination relied on several inappropriate bases. Some of the reasons provided by the ALJ to discount Claimant's testimony may well have been legitimate reasons. However, because so many were illegitimate, it is impossible for the Court to conclude how the ALJ would have assessed Claimant's testimony were she to have relied solely upon the legitimate reasons. Thus, the ALJ's treatment of Claimant's testimony merits remand.

There is another issue that justifies remand in relation to this issue. There was very little discussion of Claimant's testimony in the ALJ's opinion. Wide swathes of it went unmentioned. As the above discussion makes clear, even substantively important parts of Claimant's testimony

---

[2] The Court has not scoured the record to find every complaint of chest pain in the treatment notes, and it is not mentioning just these two instances in July 2011 and April 2012 because they are the only ones in the record. In light of the Court's ruling, no more examples were necessary.

were not touched upon. An ALJ's failure to discuss evidence contrary to her determination warrants remand because an ALJ cannot cherry-pick evidence. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *Matthews v. Astrue*, 2010 WL 2985703, at *7 (E.D. Wis. July 27, 2010). Moreover, the scant examination of the testimony frustrates the Court's ability to engage in a meaningful review of the ALJ's decision. *Eakin v. Astrue*, 432 F. App'x 607, 611 (7th Cir. 2011). For these reasons, on remand, the ALJ should more thoroughly analyze Claimant's testimony, and should do so consistent with the new relevant regulation. SSR 16-3P, 2016 WL 1119029, at *1 (March 28, 2016) (superseding SSR 96-7p).

**B.  The ALJ Improperly Considered The Opinion Evidence And Claimant's GAF Score.**

Claimant also argues that the ALJ improperly considered the opinion evidence and his GAF score. The ALJ mentioned the opinion of a state Disability Determination Service physician ("the DDS opinion"), which was affirmed by another state agency doctor. (R. 483-494.) In one sentence, the ALJ stated that "this opinion was supported by objective medical evidence and continues to (sic) even with evidence of the stenting procedure of August 2012." (R. 19.) There was no more discussion of this opinion in the ALJ's ruling.

The ALJ was required to weigh the DDS opinion and explain her weight determination. *Francis v. Astrue*, 2010 WL 5371844, at *12 (N.D. Ill. Dec. 20, 2010). Boilerplate language, such as "this opinion was supported by objective medical evidence," may be sufficient where the language is supplemented "with legitimate and sufficient reasons" for the ALJ's decision. *Wilcox v. Colvin*, 2015 WL 135441, at *3 (N.D. Ill. Jan. 9, 2015). But the boilerplate itself does not describe the weight given to the opinion or explain why such weight is merited. In this case,

9

there is nothing more than boilerplate. Not only does this incomplete analysis violate the ALJ's duty to weigh and explain her decision, it also makes meaningful appellate review impossible.

This is not the only problem. Claimant asserts the agency doctors were without knowledge of Claimant's degenerative disc disease and sciatica [ECF No. 19, at 4], which the ALJ found to be severe impairments (R. 14). The Commissioner does not deny that this is true. Claimant also contends the doctors were unaware of the developments in his cardiac condition occurring around the time that the first doctor issued his opinion and the second affirmed the opinion. [ECF No. 19, at 4.] This is the condition that required the second stent operation, which happened after the assessments were completed. *Id.* at 4-5. Again, the Commissioner does not dispute this version of events. The ALJ did not address how these clearly significant deficiencies affected the weight to be given to the state agency doctors' opinion. When a medical opinion is rendered based on a significantly deficient record, an ALJ must mention that fact and provide at least enough explanation for a reviewing court to assess how that fact impacted her weight determination. *See Staggs v. Astrue*, 781 F. Supp. 2d 790, 795 (S.D. Ind. 2011) (explaining that medical opinions rendered without importance records may be due less weight).

The only other evidence discussed by the ALJ in her paragraph on opinion evidence was Claimant's GAF score of 40 (R. 19, 543, 545).[3] The ALJ first noted – and correctly so – that this score is not dispositive for the purposes of making a disability determination. Then she generally asserted that "[t]hese records show complaints of anxiety, anger, and depression" but they also show Claimant had "normal attention, affect within normal range and good eye contact with only mildly impaired memory." (R. 19.) There is no indication as to what the phrase "these records"

---

[3] Claimant's highest GAF score reported in the record was 60. (R. 600.)

means because there is no citation to or other discussion of records in any sentence in the relevant paragraph.

Here, again, the ALJ's discussion of the significance of Claimant's low GAF scores consists of nothing more than pablum or boilerplate language describing what a GAF score is and is not used to analyze or determine. There is no analysis of the relevance of Claimant's GAF score in this particular case. GAF scores are not entirely irrelevant but that is effectively how the ALJ treated Claimant's GAF scores in this case. *Patterson v. Colvin*, 2015 WL 898186, at *6 (S.D. Ind. Mar. 2, 2015) (recognizing GAF scores may be credible evidence and probative of impairment in function); *Diaz v. Colvin*, 2014 WL 4898261, at *4 (C.D. Ill. Sept. 29, 2014) ("While an ALJ has no duty to give any weight to an individual GAF score, she cannot ignore or reject without evidentiary basis a whole series of GAF scores favorable to the claimant."); *see also Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) ("We're troubled by the 'but' and what follows it, which seems to imply that the administrative law judge thought the GAF 45 rating irrelevant . . . ."); *Wilkins v. Barnhart*, 69 F. App'x 775, 780 (7th Cir. 2003) (citing a Sixth Circuit case and describing that case's conclusion that "GAF score may assist ALJ in formulating claimant's RFC but is not essential").

The ALJ's treatment of Claimant's GAF score is particularly troubling in this case because, as the Court's discussion of her analysis of Claimant's testimony reveals, she overlooked or discounted other evidence favorable to Claimant. *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014); *see also Bates v. Colvin*, 736 F.3d 1093, 1099 n.3 (7th Cir. 2013) ("In this case, however, taking the GAF scores in context helps reveal the ALJ's insufficient consideration of all the evidence Bates presented."). Thus, the ALJ's failure to identify what relevance

Claimant's GAF scores might have to her analysis or conclusions or identify a basis in the record showing why they were irrelevant in this specific case was an error.

There is yet another cause for concern with this failure. The ALJ stated that the RFC was supported by "the expert opinion." Again, it is important to remember that the ALJ discussed Claimant's GAF scores in her paragraph on expert opinion, and, thus, this reference to "expert opinion" seems to include the GAF scores. But Claimant's GAF scores were not consistent with the RFC. "A GAF rating of 50 does not represent functioning within normal limits. Nor does it support a conclusion that [Claimant] was mentally capable of sustaining work." *Campbell*, 627 F.3d at 307; *see also Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (explaining that a GAF score of 41-50 "indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."). To use the words of another court, the ALJ's characterization of the GAF scores "is demonstrably false, and is suggestive of the type of cherry-picking . . . that has been warned against by other courts in this circuit." *Steele v. Colvin*, 2015 WL 7180092, at *3 (N.D. Ill. Nov. 16, 2015).

## IV.  CONCLUSION

For the aforementioned reasons, Claimant's motion for summary judgment [ECF No. 19] is granted. The Commissioner's motion for summary judgment [ECF No. 27] is denied. The

decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: June 13, 2016